COMMONWEALTH *vs.* SCOTT A. McCARTHY.

Norfolk. January 5, 1999. - February 10, 1999.

Present: WILKINS, C.J., ABRAMS, GREANEY, FRIED, & IRELAND, JJ.

*Search and Seizure,* Automobile, Automobile on private property, Multiple oc-
cupancy building, Warrant. *Constitutional Law,* Search and seizure.

Discussion of the concept of "curtilage" used to define areas to which Fourth
Amendment protections extend. [873-874]
A visitor's parking space in a common area open to public view at an apart-
ment complex was not within the curtilage of a tenant's apartment, and a
search of a tenant's automobile parked in that space was beyond the scope
of a warrant lawfully issued for the search of the tenant's apartment.
[874-876]

COMPLAINT received and sworn to in the Quincy Division of
the District Court Department on November 12, 1996.

A pretrial motion to suppress evidence was heard by *Thomas
F. Brownell,* J.

An application for leave to prosecute an interlocutory appeal
was allowed by *Greaney,* J., in the Supreme Judicial Court for
the county of Suffolk, and the appeal was reported by him to
the Appeals Court. The Supreme Judicial Court transferred the
case on its own initiative.

*Brian T. O'Neill,* Assistant District Attorney (*Brian A. Wilson,*
Assistant District Attorney, with him) for the Commonwealth.

*William F. Sullivan* for the defendant.

IRELAND, J. This appeal raises the issue whether a visitor's
parking space at an apartment complex is within the curtilage of
a tenant's apartment. If it is, then a search warrant issued for
the apartment would encompass that parking space. A District
Court judge ruled that the space is not within the curtilage, and
granted the defendant's motion to suppress evidence found dur-
ing a search of his automobile.[1] We conclude that the visitor's

---

[1]The defendant's motion to suppress only mentioned the evidence found in
the search of his automobile. The judge, in granting the motion, also sup-

parking space is beyond the curtilage of the defendant's apartment, and accordingly affirm the order of the motion judge.

I

On November 4, 1996, the Quincy police department obtained a warrant to search the defendant's apartment.[2] The affidavit filed in support of the application for the search warrant indicated that the defendant sold drugs from his apartment and automobile; however, the police only requested authority to search the apartment.[3] The officers executed the search warrant on November 8, 1996. When they arrived at the apartment complex, the officers saw the defendant drive into the parking lot and pull his vehicle into a visitor's parking space.[4] The officers approached the defendant and informed him they were there to execute a search warrant. They then searched him and the vehicle. Drugs were found, both on him and in the vehicle.

The defendant filed a motion to suppress the evidence found during the search of his vehicle, asserting that the warrant did not state with specificity the area to be searched, and that the search of the vehicle exceeded the authority granted by the warrant. After a hearing, the judge granted the motion. The judge ruled that because the defendant's vehicle was not parked within the curtilage of his apartment when it was searched, the officers

pressed the evidence found on the defendant. The judge apparently relied on the same reasoning in suppressing the evidence found on the defendant as he did in suppressing the evidence found in the vehicle. On appeal, the Commonwealth does not specifically challenge suppression of the evidence found on the defendant.

[2]The warrant specifically authorized a search of "Apt. # 206 at # 8 Tinson Rd Quincy, Massachusetts, located on the second floor with the # 206 affixed to the door."

[3]We note that this problem could have been avoided altogether had the police included the vehicle in the application for the search warrant.

[4]At the hearing on the motion to suppress, Detective Mark Foley of the Quincy police department described the parking lot. Adjacent to the apartment building is an "L" shaped parking lot. The lot is not visible from the road because it is set up on a hill higher than the road. Concrete retaining walls are situated around the perimeter. On the sides of the lot sit dense shrubbery, and another apartment building is located behind the parking lot. No gates or similar structures enclose the parking lot. There are approximately forty to fifty parking spaces in the lot. There are both assigned tenant spaces and visitor spaces. The defendant had a space assigned to his apartment. On the date in question the defendant parked in a visitor's parking space located about twenty-five feet from a side door to the apartment building. See note 5, *infra.*

exceeded the scope of the warrant. The Commonwealth filed an application for interlocutory appeal in the county court. The application was allowed by a single justice. We then transferred the matter from the Appeals Court on our own motion.

## II

The Fourth Amendment to the United States Constitution; art. 14 of the Massachusetts Declaration of Rights; and G. L. c. 276, § 2, require that search warrants state with particularity the place to be searched and the items to be seized. See *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *Commonwealth* v. *Walsh*, 409 Mass. 642, 644-645 (1991), and cases cited. The particularity requirement is designed to prohibit "wide-ranging exploratory searches." *Commonwealth* v. *Carrasco*, 405 Mass. 316, 323 (1989), quoting *Maryland* v. *Garrison, supra.* "[T]he scope of a warrant authorizing the search of a particularly described residence includes any automobiles, owned or controlled by the owner of such residence, which are located within the curtilage of the premises at the time the warrant is executed." *Commonwealth* v. *Signorine*, 404 Mass. 400, 403 (1989). Reading the definition of a particularly described residence to include such areas is reasonable under art. 14. *Id.* at 405. See *Commonwealth* v. *Santiago*, 410 Mass. 737, 740 (1991). Conversely, vehicles found outside of the curtilage at the time the warrant is executed cannot be searched pursuant to a warrant issued for the residence. *Id.* at 741. The warrant in question did not specifically include the defendant's automobile. The parties' central disagreement, and the core of our inquiry, therefore, is whether the visitor's parking space, in which the defendant's vehicle was situated when it was searched, is within the curtilage of the apartment named in the search warrant.

## III

"The curtilage concept originated at common law to extend to the area immediately surrounding a dwelling house the same protection under the law of burglary as was afforded the house itself." *United States* v. *Dunn*, 480 U.S. 294, 300 (1987). Today, the curtilage concept is more commonly used to define those areas to which Fourth Amendment protections extend. See *Oliver* v. *United States*, 466 U.S. 170, 180 (1984), and cases cited. See also *Commonwealth* v. *Straw*, 422 Mass. 756, 762 (1996) (noting the "high degree of protection afforded by the Fourth

Amendment to the curtilage of one's own home"). When used in the Fourth Amendment context, curtilage helps to define those areas that the police generally cannot search without a warrant. In the present context, however, curtilage serves a different function — it helps to define where the police can search pursuant to a warrant. See *Commonwealth* v. *Signorine, supra.*

Curtilage is treated as an extension of the home, both for extending Fourth Amendment protections and for defining the scope of search warrants. The Supreme Court has held that an area is within the curtilage of a residence only when it is "so intimately tied to the home itself" that "an individual reasonably may expect that the area in question [will] be treated as the home itself." *United States* v. *Dunn, supra* at 300, 301. See *California* v. *Ciraolo,* 476 U.S. 207, 213 (1986) (areas within the curtilage afforded the same Fourth Amendment protections as the home itself because they are "intimately linked to the home, both physically and psychologically"); *Oliver* v. *United States, supra* at 180 (stating that the concept of curtilage protects those areas outside of the home that are intimately related to the privacy associated with the home). *United States* v. *Dunn, supra* at 301, set out four factors to consider in deciding if a particular area is within the curtilage: (1) the proximity of the area to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observations by people passing by. These factors are not intended as a "finely tuned formula"; rather, they provide a framework to aid in analyzing the relevant facts and deciding the core issue — whether the area in question "harbors those intimate activities associated with domestic life and the privacies of the home." *Id.* at 301 & n.4.

The Commonwealth argues that the parking space was within the curtilage of the defendant's apartment, and consequently within the scope of the search warrant. It is the Commonwealth's position that all the tenants of the apartment complex have a reasonable expectation of privacy in the parking lot. By exercising control over a particular parking space in the lot, the tenant converts the space into curtilage. What the Commonwealth proposes, in essence, is a roaming zone of curtilage that would follow the defendant's car to whichever parking space he selects at the apartment complex on a given day. We do not agree with the definition of curtilage advanced by the Commonwealth.

The parking space in question is about twenty-five feet from the side entrance of the apartment building.[5] Between the defendant's apartment and the parking space presumably lay common hallways, entrances, and exits to other apartment units, and a shared parking lot open to both tenants and visitors of the building. To whatever extent the parking lot is enclosed, it is an enclosure encompassing a common area utilized by all the tenants and visitors of the building. The parking lot would also routinely be used by a wide range of individuals. On a daily basis not only would tenants and their guests pass through the lot, but so would delivery people, maintenance workers, and anyone else with business at the building. Furthermore, each space within the parking lot is freely visible to anyone entering the lot. The record does not reveal any landscape or design features within the parking lot which would create a reasonable expectation of privacy in any individual parking space. In sum, neither the physical layout of the parking lot, nor the nature of its regular and intended uses, would give tenants any reasonable expectation that it would be "treated as the home itself." *United States* v. *Dunn, supra* at 300.

Previous decisions of this court reinforce our conclusion that the visitor's parking space is not within the curtilage of the defendant's apartment. We have held that an area is not within the curtilage if it is open to public view, and is one which "visitors and tenants on the property would pass on the way to the front door." *Commonwealth* v. *Simmons*, 392 Mass. 45, 48-49, cert. denied, 469 U.S. 861 (1984). Even the screened-in front porch of a private residence may not be curtilage if it is "one that a visitor would naturally expect to pass through" when approaching the home. *Commonwealth* v. *Pietrass*, 392 Mass. 892, 901 (1984). The parking space in which the defendant's car was situated when searched is not only an area that visitors would normally pass through on the way to the building, it is an area specifically designed to accommodate such use by visitors.

We have also held that the area of curtilage appurtenant to an apartment is very limited. See *Commonwealth* v. *Thomas*, 358

[5]In the defendant's affidavit, filed in support of his motion to suppress, he describes his vehicle as having been parked "75 feet away from the main entrance to the apartment building." In their briefs, both the Commonwealth and the defendant describe the vehicle as having been parked twenty-five feet from a side entrance. At oral argument, defense counsel referred to the space as being twenty-five *yards* from the entrance. On the facts of this case, the distinction is not a significant factor in our analysis.

Mass. 771, 774-775 (1971) ("In a modern urban multi-family apartment house, the area within the 'curtilage' is necessarily much more limited than in the case of a rural dwelling subject to one owner's control. . . . In such an apartment house, a tenant's 'dwelling' cannot reasonably be said to extend beyond his own apartment and perhaps any separate areas subject to his exclusive control." [Citations omitted.]) See also *Commonwealth* v. *Hall*, 366 Mass. 790, 794 (1975) (noting the limited expectation of privacy tenants of multi-unit apartment buildings have in common areas on the property).

Because the defendant had no reasonable expectation of privacy in the visitor's parking space, the space was not within the curtilage of the defendant's apartment. *Commonwealth* v. *Simmons, supra* at 49. As the parking space was beyond the curtilage of the defendant's apartment, the search warrant for the defendant's apartment did not extend to it. *Commonwealth* v. *Signorine, supra* at 403. Put another way, where the vehicle was not within the curtilage of the residence named in the warrant when searched, the search exceeded the scope of the authority granted by the warrant. In order to overcome the defendant's expectation of privacy, the vehicle should have been either included in the warrant or named in a separate warrant. Consequently, the judge properly granted the defendant's motion to suppress and his order is affirmed.

*So ordered.*