STATE OF NEBRASKA, APPELLEE, V.
FRANK J. RAMAEKERS III, APPELLANT.
597 N.W. 2d 608

Filed July 30, 1999.   No. S-98-1030.

Wm. D. Kurtenbach, of Kurtenbach Law Office, for appellant.

Don Stenberg, Attorney General, and Amber Fae Herrick for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

This case presents the question whether the sidewalk leading to the front door of a person's home is part of the curtilage of the home, so that it receives Fourth Amendment protection against unreasonable search and seizure. In this case, we conclude that the sidewalk is unprotected and that the Fourth Amendment is not implicated. Therefore, we affirm.

## I. BACKGROUND

Frank J. Ramaekers III was convicted in county court of two counts of procuring alcoholic liquor for a minor, both Class I misdemeanors, and was sentenced to 60 days in jail on each count, to be served concurrently. Prior to trial, Ramaekers had filed a motion to suppress evidence based on an alleged violation of his Fourth Amendment search and seizure rights, which motion was denied. He appealed to the district court, which affirmed, concluding that Ramaekers' rights against unreasonable search and seizure were not violated and that the motion to suppress was properly overruled.

### 1. INVESTIGATION

Deputies of the Platte County Sheriff's Department, including Officer Robert W. Blaha, were dispatched to Ramaekers' residence to investigate a report that a party involving minors in possession of alcohol was in progress. Upon arrival, Blaha noticed that the mailbox was decorated with party streamers. Blaha's vehicle proceeded into the gravel driveway. As Blaha's vehicle approached Ramaekers' garage, he saw what appeared to be three juveniles sitting on a fence. Blaha exited his vehicle and spoke with the three juveniles. They admitted that a party was taking place and that two of the three were under the legal age to consume alcohol. Blaha heard voices coming from the front of the house, so he told the three persons sitting on the fence to stay where they were and started walking toward the front door.

While standing on the sidewalk that leads to the front door, Blaha observed a party in the front yard. There were two 16-gal-

lon kegs of beer, and several people, who appeared to be juveniles, were standing around, holding plastic cups. One juvenile yelled, "more beer, more beer." Blaha saw a couple of juveniles drink from the plastic cups. At this point, Blaha started to gather the juveniles for questioning.

Ramaekers approached Blaha and stated that he was in charge of the party. Ramaekers admitted that he knew juveniles were present and consuming alcohol. Blaha then read Ramaekers the *Miranda* warnings, and Ramaekers signed the advisement waiver.

### 2. RAMAEKERS' RESIDENCE

Ramaekers' residence is not visible from the public road; there is a small rise between the house and the public road, and the area is heavily wooded. The property is enclosed by a fence along the public road, and the driveway leading to the house is gated, although the gate was open on the night Blaha conducted his investigation. The driveway approaches the house generally from the north. The house itself faces south, and the area where the party took place was on the south, or front, side of the house. This area was not immediately visible from the point at which Blaha stopped his vehicle. To observe the party, Blaha had to walk from the driveway to a sidewalk leading through a decorative rail fence, upon which the three individuals with whom Blaha had spoken were sitting, and around to the south, or front, side of the house.

## II. ASSIGNMENT OF ERROR

Ramaekers assigns that the trial court erred in overruling his motion to suppress.

## III. SCOPE OF REVIEW

■ When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision below. *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999).

## IV. ANALYSIS

Ramaekers argues that his Fourth Amendment protection against unreasonable search and seizure was violated when

Blaha entered upon Ramaekers' property without a warrant. The State concedes that Blaha entered upon Ramaekers' property without a warrant. The question is whether Blaha's entry constituted an unreasonable search and seizure.

■ Although " '[e]very trespass, by definition, invades someone's right of possession . . . not every . . . trespass violates the Fourth Amendment.' " *State v. Trahan*, 229 Neb. 683, 688, 428 N.W.2d 619, 623 (1988), quoting *United States v. Kramer*, 711 F.2d 789 (7th Cir. 1983). The " 'Fourth Amendment protects *people, not places.*' " (Emphasis in original.) *State v. Havlat*, 222 Neb. 554, 558, 385 N.W.2d 436, 439 (1986), quoting *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). Therefore, to determine whether a person has an interest protected by the Fourth Amendment, one must question whether the person has a legitimate expectation of privacy in the invaded space. *State v. Merrill*, 252 Neb. 510, 563 N.W.2d 340 (1997). A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable. *Id.*

### 1. OPEN FIELDS DOCTRINE

■ In this case, Ramaekers asserts that the sidewalk upon which Blaha was standing when he observed the party was within the curtilage of Ramaekers' residence, and was not an open field. The "open fields" doctrine has been used as an aid in determining whether one has a legitimate expectation of privacy in the invaded space. See, *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995); *State v. Havlat, supra* (discussing origin of open fields doctrine). According to this doctrine, " '[O]pen fields do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance.' " *State v. Havlat*, 222 Neb. at 559, 385 N.W.2d at 440, quoting *Oliver v. United States*, 466 U.S. 170, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984). However, the curtilage of a residence, which is that area " 'so intimately tied to the home itself' that 'an individual reasonably may expect that the area in question [will] be treated as the home itself,' " *Com. v. McCarthy*, 428 Mass. 871, 873, 705 N.E.2d 1110, 1112 (1999), quoting *United States v. Dunn*, 480 U.S. 294, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987), is protected.

### (a) Curtilage

Although this court has generally defined "curtilage" as a small piece of land, not necessarily enclosed, around a dwelling, which may include buildings used for domestic purposes in the conduct of family affairs, *State v. Trahan, supra*, all curtilage inquiries are by nature fact specific. In *United States v. Dunn, supra*, the U.S. Supreme Court described the elements that should be considered when determining whether a particular area is within the curtilage: (1) the proximity of the area claimed to be curtilage to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by. Of these, the third element is of "centrally relevant consideration." 480 U.S. at 301.

### (b) *State v. Merrill*

In *State v. Merrill, supra*, this court addressed whether an individual had a legitimate expectation of privacy in his driveway. In making this determination, we focused on the accessibility and visibility of the driveway from the public roadway. We noted that the driveway was visible from the public roadway and that there was no evidence of a gate, fence, or any other sort of obstruction that limited access to the driveway. Based on these facts, we held that the individual's interest in his driveway was not protected by the Fourth Amendment.

Our opinion in *State v. Merrill, supra*, did not use the term "curtilage," nor did it explicitly apply the test set forth in *United States v. Dunn, supra*. However, as we have previously stated, the ultimate inquiry in any Fourth Amendment analysis is whether the citizen has a legitimate expectation of privacy in the invaded area. The open fields doctrine, and the attendant concept of curtilage, are merely applications of this rule. See *U.S. v. Redmon*, 138 F.3d 1109 (7th Cir. 1998) (Flaum, J., concurring) (stating that curtilage is descriptive, rather than prescriptive, term in our Fourth Amendment jurisprudence).

An analysis of this court's opinion in *State v. Merrill*, 252 Neb. 510, 563 N.W.2d 340 (1997), demonstrates that its reasoning is consistent with that of the Supreme Court's in *United*

*States v. Dunn, supra.* The factors considered by this court in *Merrill v. State, supra,* accessibility and visibility, relate to the concepts that are encompassed in the first, second, and third elements of the *Dunn* test. A driveway that is visible from the public roadway is certainly not included within an enclosure surrounding the home, nor have steps been taken by the resident to protect the driveway from observation by people passing by. Likewise, a driveway that is accessible to the public is not in close "proximity" to the home insofar as the concept of proximity represents the "intimacy," see *United States v. Dunn, supra,* of the relationship between the home and the driveway.

The only factor in *United States v. Dunn,* 480 U.S. 294, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987), that is not explicitly accounted for by the accessibility and visibility test in *Merrill* is the third element of the *Dunn* test, the nature of the uses to which the area is put. However, this element of the *Dunn* test is inherent in the area's description as a driveway—a driveway that is visible to and accessible by the public does not, by its very nature, implicate the type of intimate activity that is associated with the home. See *United States v. Roberts,* 747 F.2d 537 (9th Cir. 1984). Thus, our holding in *State v. Merrill, supra,* is based on the proposition that society does not reasonably expect a driveway to be private in the absence of evidence to the contrary unless, i.e., it is not accessible or not visible to the public.

### 2. APPLICATION OF LAW TO FACTS

■ Similarly, our society does not reasonably expect a sidewalk leading to one's front door to be private in the absence of evidence to the contrary. See, e.g., *U.S. v. Thomas,* 120 F.3d 564 (5th Cir. 1997); *Com. v. McCarthy,* 428 Mass. 871, 705 N.E.2d 1110 (1999); *State v. Hubbel,* 286 Mont. 200, 951 P.2d 971 (1998); *State v. Rose,* 128 Wash. 2d 388, 909 P.2d 280 (1996); *State v. Gabbard,* 129 Or. App. 122, 877 P.2d 1217 (1994). "[A] person impliedly consents to visitors going to the front door of the person's house, provided the person has not manifested an intent to forbid the intrusion of casual visitors onto the property." *State v. Gabbard,* 129 Or. App. at 126, 877 P.2d at 1220. The pathway leading from the driveway to the front door of a home is generally not within the curtilage because it does not

harbor the intimate activity associated with the sanctity of the home and privacy of life. *U.S. v. Rodgers*, 924 F.2d 219 (11th Cir. 1991).

In *U.S. v. Thomas, supra*, the defendants argued that the police had violated the defendants' Fourth Amendment rights by walking through the gate of a privacy fence surrounding the defendants' apartment. The court noted that the gate was open when the officers entered the area and that there was no indication that permission was needed to pass through the gate. The court concluded that the officers could reasonably believe that the gate provided the principal means of access to the apartment through which they could approach the front door and that under those circumstances, the police did not violate the Fourth Amendment by doing so. *Id.*

In the instant case, the entry to the driveway was clearly visible from the public roadway and was marked with streamers. The gate to the property was open when Blaha entered the drive, and no other obstructions blocked the way. There were no signs posted prohibiting entry onto the property. When Blaha stopped his vehicle, he walked through an opening in a decorative fence and onto a sidewalk leading to the front door of Ramaekers' home. There was no gate protecting the opening in the decorative fence, nor was there any other indication that Ramaekers considered his front walk to be private. Put in the terms of *State v. Merrill*, 252 Neb. 510, 563 N.W.2d 340 (1997), the driveway and front walk were accessible and visible to the public. As stated by the Montana Supreme Court, "if the police had parked in the driveway and walked to the front door to sell policeman ball tickets, they would have had a legitimate right to be on the premises." *State v. Hubbel*, 286 Mont. at 210, 951 P.2d at 977. We conclude that, under these circumstances, Blaha was lawfully on the front walk when he observed the ongoing party.

Moreover, "observations made by [police] officers while they are not within the curtilage of a house do not constitute a search under the Fourth Amendment." *U.S. v. Traynor*, 990 F.2d 1153, 1157 (9th Cir. 1993). Objects' falling within the plain view of an officer, who has the right to be in the position to have such view, does not constitute a search. *State v. Merrill, supra.* Because Blaha was rightfully on the premises when he observed

the party, which was in his plain view, Ramaekers' Fourth Amendment rights were not implicated.

## V. CONCLUSION

We conclude that the trial court did not err in overruling Ramaekers' motion to suppress. As a result, we affirm.

AFFIRMED.