NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1392                                         Appeals Court

COMMONWEALTH  vs.  LUIS SANCHEZ.

No. 14-P-1392.

Bristol.      February 5, 2016. - March 23, 2016.

Present:  Green, Hanlon, & Henry, JJ.


Controlled Substances.  Search and Seizure, Curtilage, Warrant.
     Witness, Privilege.  Practice, Criminal, Motion to
     suppress, Required finding, Assistance of counsel,
     Instructions to jury.  Evidence, Constructive possession.



     Indictment found and returned in the Superior Court
Department on September 28, 2012.

     A pretrial motion to suppress evidence was heard by Renée
P. Dupuis, J., and the case was tried before Robert J. Kane, J.


     Brad P. Bennion for the defendant.
     Tara L. Blackman, Assistant District Attorney, for the
Commonwealth.


     GREEN, J.  Among various challenges to his conviction of

trafficking in one hundred grams or more of "crack" cocaine, in

violation of G. L. c. 94C, § 32E, the defendant contends that a

search warrant authorizing a search of his apartment did not

extend to a free-standing shed in the backyard outside the three-unit apartment building.[1]  We conclude that the motion judge correctly concluded that the shed was a part of the curtilage of the apartment, so that the search authorized by the warrant properly extended to the shed.  Discerning no merit in the defendant's other claims of error, we affirm.

Background.  We summarize the findings of the motion judge on the defendant's motion to suppress, reserving other facts for our discussion of the defendant's other claims.  On August 28, 2012, New Bedford police Officer Jason Gangi and other members of the New Bedford police department executed a search warrant authorizing a search of the third-floor apartment at 101 Coffin Avenue and any persons present.  The building at 101 Coffin Avenue is a multi-family dwelling consisting of three apartments.  Police set up surveillance at the target location. Two vehicles approached the location, and the defendant was a passenger in one of the vehicles.  Police stopped the defendant and obtained a set of keys from him.[2]  Using a key from the set,

---

[1] The defendant also claims error in the conclusion by the trial judge that the defendant's brother had a privilege under the Fifth Amendment to the United States Constitution not to testify at trial, and in various aspects of the judge's instructions; he also contends that his trial counsel was constitutionally ineffective for failing to renew a motion for a required finding of not guilty at the close of all the evidence.

[2] The defendant does not challenge the propriety of the stop or the seizure of the keys.

police opened the door to the third-floor apartment. Within minutes after gaining entry to the apartment, Officer Gangi went to the backyard to search. The entire backyard was fenced. While in the yard, Officer Gangi discovered a locked shed and, using one of the keys on the key ring obtained from the defendant, unlocked a padlock on the shed door and gained access to the interior of the shed. Inside the shed, Officer Gangi observed a black BMW motor vehicle, a dirt bike, some tools, and a shopping bag. Officer Gangi determined that another key on the key ring obtained from the defendant fit the BMW. Officer Gangi also found and seized a substantial quantity of cocaine hidden above a ceiling panel within the shed.

Among other items found in and seized from the third-floor apartment were rent receipts indicating that the defendant rented the shed from the owner of the apartment building. In the affidavit in support of the application for the search warrant Officer Gangi averred that he confirmed that the utilities for the third-floor apartment were in the names of the defendant and Ana Perez.[3] The affidavit also related information obtained from a confidential informant regarding sales of cocaine by the defendant from the third-floor apartment, and describing the informant's personal observation of cocaine

---

[3] Perez is the defendant's grandmother.

packaged for sale in the apartment within the seventy-two hours preceding the warrant application.

Search of the shed.  "The curtilage concept originated at common law to extend to the area immediately surrounding a dwelling house the same protection under the law of burglary as was afforded the house itself."  Commonwealth v. McCarthy, 428 Mass. 871, 873 (1999), quoting from United States v. Dunn, 480 U.S. 294, 300 (1987).  "When used in the Fourth Amendment context, curtilage helps to define those areas that the police generally cannot search without a warrant.  In the present context, however, curtilage serves a different function -- it helps to define where the police can search pursuant to a warrant."  Commonwealth v. McCarthy, supra at 874.  In Dunn, the United States Supreme Court set out four factors to be considered when deciding whether a particular area is within the curtilage of a particular home:  "(1) the proximity of the area to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observations by people passing by."  Commonwealth v. McCarthy, supra.

The Dunn factors support the motion judge's conclusion that, here, the shed is a part of the curtilage of the third-floor apartment.  The shed is within the backyard immediately

adjacent to the building in which the apartment is located.  See

Commonwealth v. Murphy, 353 Mass. 433, 436 (1968).  The yard

itself is enclosed by a fence.  Most importantly, the defendant

rented the shed from the building owner, and restricted access

to it by means of the padlock he placed on the door.  The

defendant accordingly enjoyed exclusive access to, and use of,

the shed, at least in comparison to the occupants of the other

two apartments in the building, or other members of the public.[4]

See Commonwealth v. Escalera, 462 Mass. 636, 648 (2012);

Commonwealth v. Pierre, 71 Mass. App. Ct. 58, 63 (2008).  See

also Commonwealth v. Thomas, 358 Mass. 771, 774-775 (1971)

(emphasizing significance of exclusive control in identifying

areas of urban apartment building outside apartment unit that

may be considered part of apartment's curtilage).  Compare

Commonwealth v. McCarthy, supra at 875 (parking space within

shared parking lot in multi-unit apartment complex not part of

apartment's curtilage).  We discern no error in the conclusion

by the motion judge that the shed was part of the curtilage of

---

[4] We note that there was evidence at trial that other occupants of the defendant's apartment may have enjoyed access to the shed, by virtue of the fact that the defendant occasionally left the key to the shed hanging on a rack in the apartment to which other residents of the apartment had access. That evidence, however, was not presented at the evidentiary hearing on the motion to suppress.  In any event, it does not derogate from the relationship between the shed and the defendant's apartment, as compared to the other apartment units in the building.

the defendant's apartment; thus the warrant authorizing search of the apartment also authorized search of the shed.

Other issues.  The defendant's remaining claims require only brief discussion.  We discern no abuse of discretion by the trial judge in his conclusion that the defendant's brother had a privilege under the Fifth Amendment to the United States Constitution not to testify for the prosecution, as his testimony could have implicated him as a potential coventurer with the defendant.  The defendant's claim of prejudice from the judge's conclusion only illustrates its correctness; the defendant claims that he was deprived of the opportunity, as part of his third-party culprit theory of defense, to establish through cross-examination of his brother that the brother had access to the shed and accordingly that the drugs seized from the garage could have been his.[5]  There is likewise no merit in the defendant's claim that his trial counsel was ineffective by reason of his failure to renew his motion for a required finding of not guilty, first raised at the close of the Commonwealth's case, following the close of all the evidence.[6]  See Commonwealth

---

[5] We note that the defense in any event would have needed to establish not merely that the defendant's brother possessed the drugs, but that his possession was exclusive, and that the defendant did not jointly possess them.

[6] The defendant rightly does not challenge the sufficiency of the evidence as it stood at the close of the Commonwealth's case.  The defendant's suggestion that his motion for a required

v. Conceicao, 388 Mass. 255, 264 (1983).  Put simply, nothing in the defendant's case caused the Commonwealth's case to deteriorate.[7]

Finally, there is no merit to the defendant's several claims of error in the judge's jury instructions.  None of the defendant's claims was preserved by objection at trial; we accordingly consider whether any error created a substantial risk of a miscarriage of justice.[8]  See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).  Contrary to the defendant's contention, the judge did not in his preliminary instruction describing the indictment remove from the jury's consideration an essential element of fact by instructing that the defendant in fact

---

finding of not guilty should (by reason of the judge's ruling that the defendant's brother had the privilege to refuse to testify) have received the benefit of a presumption that the brother likely had access to the garage finds no support in law, and in any event suffers from the deficiency observed in note 5, supra.

[7] To the extent that the defendant's argument rests on the premise that testimony by Perez, the defendant's grandmother, raised the possibility that other persons besides the defendant had access to the shed, the argument ignores the fact that the jury were not required to credit her testimony, and it again fails to recognize that the defendant could constructively possess the drugs found in the shed even if someone else possessed them jointly with him.

[8] Though the defendant objected at trial to the judge's use of an analogy to explain the concept of constructive possession, the defendant's objection to that portion of the instruction relied on a theory different from the argument he advances on appeal.

possessed the drugs seized from the shed.  Instead, the judge merely explained initially that the indictment charged the defendant with possessing the drugs, and clearly went on to explain that the question before the jury was whether the defendant possessed the drugs.[9]  Likewise unavailing is the defendant's challenge to an analogy used by the trial judge in his final instructions to explain the concept of constructive possession; the analogy was apt, and no undue prejudice nor potential for confusion flowed from the fact that (similar to the circumstances of the present case) the analogy used actual possession of keys to illustrate constructive possession of an item held in another area.[10]  Finally, there was nothing improper

---

[9] The relevant portion of the instruction is as follows:

> "I will give you a very preliminary description of what that indictment means.  It means that the defendant had in his possession cocaine in the amount of at least one hundred grams.  And you're going to hear that there are stipulations in this case.  Both parties agree that cocaine was found.  Both parties agree that there was cocaine amounting to more than one hundred grams.  But the question is this.  Who possessed it?  Who possessed it?  And it is the Commonwealth's responsibility as part of its case to prove beyond a reasonable doubt that Luis Sanchez possessed it, either individually or jointly."

[10] We again quote the relevant portion of the instruction:

> "And we'll compare actual possession to constructive possession so that you can appreciate it.  When I speak of actual possession, jurors, that's actual possession.  Those keys are in my hand. . . .  And it's very obvious that these keys to my car and my house are going to be under my dominion and control.  Now, what's constructive possession?

about the judge's instruction that if the jury found that the defendant constructively possessed the drugs, it did not matter whether someone else jointly possessed the drugs with him.  The instruction was a correct statement of the law.  See Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989), quoting from Commonwealth v. Rosa, 17 Mass. App. Ct. 495, 498 (1984) ("Possession implies 'control and power,' . . . exclusive or joint . . . , or, in the case of 'constructive possession,' knowledge coupled with the ability and intention to exercise dominion and control").  There was no error in the judge's instruction, and hence no substantial risk of a miscarriage of justice.

Judgment affirmed.

---

Well, I don't have my briefcase in my hand, do I?  My briefcase is right in that lobby, and that lobby's locked.  But I have a key to that lobby.  So I have access to that lobby, and I know that that leather briefcase is right there."