After a jury-waived trial, the defendant, Anthony Russ, was convicted of possession of cocaine and heroin with the intent to distribute. See G. L. c. 94C, § 32(a ) (heroin); G. L. c. 94C, § 32A(a ) (cocaine). The defendant argues that the motion judge erred in denying his motion to suppress and that the trial judge erred in denying his motion for required findings of not guilty. We affirm.
1. Motion to suppress. The police obtained a warrant to search "the premises" of the defendant's grandparents' home on General Patton Drive in Hyannis. The defendant argues that the search of two vehicles parked on a second driveway on the property, leading to the discovery of cocaine and heroin, was outside of the scope of the search warrant and therefore improper.
When considering a ruling on a motion to suppress, we must accept the motion judge's subsidiary findings of fact, absent clear error. See Commonwealth v. Carr, 458 Mass. 295, 298 (2010). We independently review the ultimate findings and conclusions of law. See Commonwealth v. Scott, 440 Mass. 642, 646 (2004).
When officers search a residence pursuant to a search warrant, they may also search property surrounding the residence, including vehicles located within the curtilage of that residence. Commonwealth v. McCarthy, 428 Mass. 871, 873-874 (1999). "Curtilage is treated as an extension of the home." Id. at 874. We rely on four factors to analyze what areas exist within the curtilage of a home: "(1) the proximity of the area to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observations by people passing by." Ibid.
During the execution of the search warrant, police searched two vehicles, a truck and a Marquis, both of which were parked on one of two driveways on the property.[2] Applying the factors to this case, we agree with the motion judge's conclusion that the driveway and the vehicles on it were within the curtilage of the residence. The driveway where the vehicles were parked was adjacent to the home, with a visible path leading to a screened in gazebo between the house and the driveway. The driveway extended from General Patton Drive back to a storage shed also on the property. There was no fence within the property separating the house from the driveway, although a fence and shrubbery separated the entire property from the next residence. See Commonwealth v. Straw, 422 Mass. 756, 759-761 (1996) (enclosed backyard was part of curtilage). Additionally, the vehicles on the driveway were close to the house; the truck was located approximately twenty-five to thirty feet from the side door of the house, and the Marquis was no more than forty feet from the door. Contrast United States v. Dunn, 480 U.S. 294, 302 (1987) (barn located sixty yards from house, outside of fenced area, was not in curtilage). Although the vehicles were backed into the driveway, suggesting that there was some attempt to shield the back of the vehicles from the street, no one factor is dispositive. See Commonwealth v. Fernandez, 458 Mass. 137, 142 (2010) (driveway in which car was parked was "intimately tied" to residence). The sum of the facts indicate that the driveway fell within the curtilage of the residence.[3] ,[4]
2. Denial of motions for required findings of not guilty. The defendant argues that there was insufficient evidence to convict him of either charge on the theory of constructive possession.
When reviewing the denial of a motion for a required finding of not guilty, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).
To prove constructive possession, the Commonwealth must prove that "the defendant had 'knowledge coupled with the ability and intention to exercise dominion and control' " over the contraband. Commonwealth v. Sann Than, 442 Mass. 748, 751 (2004), quoting from Commonwealth v. Sespedes, 442 Mass. 95, 99 (2004). "The Commonwealth may prove that the defendant had knowledge of the contraband by circumstantial evidence, if the evidence warrants a reasonable inference to that effect." Commonwealth v. Garcia, 409 Mass. 675, 686 (1991). Although presence near the contraband alone is insufficient, "presence, supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.' " Commonwealth v. Albano, 373 Mass. 132, 134 (1997), quoting from United States v. Birmley, 529 F.2d 103, 108 (6th Cir. 1976).
Viewing this evidence in the light most favorable to the Commonwealth and drawing all inferences in the Commonwealth's favor as required by Latimore, supra, there was sufficient evidence to find that the defendant constructively possessed the cocaine and heroin. Officers extensively surveilled the defendant between January and April, 2013, and routinely observed him stopping at his grandparents' house on General Patton Drive, usually multiple times per day during the three-month surveillance period, often staying for just minutes at a time and sometimes standing in the yard or walking behind the truck and the shed and porch area.[5] While this alone would be insufficient to find that he possessed the cocaine and heroin on the property, several plus factors tip the analysis in the Commonwealth's favor.
The fact finder would be warranted in finding that the defendant was engaged in a sophisticated drug operation involving residences on both West Main Street and General Patton Drive, where the defendant returned to the General Patton address to regenerate his supply, and that the contraband located during the execution of the search warrant was within the defendant's possession. See Commonwealth v. Velasquez, 48 Mass. App. Ct. 147, 150 (1999) (evidence that apartment was drug trading post was plus factor in finding constructive possession of drugs in apartment).
In addition to the surveillance conducted, officers executed two search warrants, one at the defendant's West Main Street apartment, and the other at the General Patton address. Upon the execution of the search warrant at the defendant's West Main Street apartment, police discovered a narcotic cutting agent, two digital scales, two c-clamps, a homemade press for cocaine, and a cellular telephone (cell phone). The defendant was searched outside of the apartment, and officers uncovered $1,300 in cash and two additional cell phones on his person. See Pena v. Commonwealth, 426 Mass. 1015, 1018 (1998) (defendant's arrest "with a large amount of cash on his person ... strongly suggests his direct participation in the drug distribution").
A search of the General Patton address also uncovered a safe containing two digital scales. Also in the same room was mail addressed to the defendant. It was during the search of the vehicles parked on the second driveway at the General Patton address that police found the heroin and cocaine that are the bases for the defendant's convictions. Officers discovered in the wheel base of a truck a plastic bag containing other small bags containing heroin, and in the trunk of a car discovered a white tied bag of cocaine inside of a plastic bag inside of a shoebox.
The evidence, taken as a whole, permits the inference that the defendant had constructive possession of the cocaine and heroin; "while each additional incriminatory or 'plus' factor taken alone may vary in terms of persuasive force, 'when combined ... [they] add up sufficiently to allow [the finder of fact] to find' that the scale was tipped in favor of finding constructive possession of cocaine" and heroin. Commonwealth v. Montalvo, 76 Mass. App. Ct. 319, 325 (2010), quoting from Commonwealth v. Maillet, 54 Mass. App. Ct. 910, 911 (2002).
The evidence also supported an inference that the defendant possessed both the cocaine and heroin with the intent to distribute each. "Intent is a factual matter that may be proved by circumstantial evidence." Commonwealth v. LaPerle, 19 Mass. App. Ct. 424, 427 (1985). The Commonwealth offered expert testimony regarding drug distribution, including that a distributor may keep their supply outside of their house, that the supply may be hidden outside, and that the packaging of the heroin and cocaine was consistent with distribution. There was also testimony about the defendant's possession of multiple cell phones, digital scales, a homemade press, a c-clamp, and a cutting agent. See Commonwealth v. Roman, 414 Mass. 642, 645 (1993) (to prove intent to distribute, "the Commonwealth could rely on the presence of various items used to manufacture or distribute drugs"). Furthermore, officers also observed the defendant meeting with other individuals at the General Patton and West Main addresses, including short meetings that lasted for just "moments" at a time. See Montalvo, 76 Mass. App. Ct. at 327 ("[T]here are a number of indicia that have been considered in the assessment of the intent to distribute"). In its totality, the fact finder could infer that the defendant possessed these narcotics with the intent to distribute them.
Judgments affirmed.

We note that the search warrant was not specifically limited to the residence.

The defendant claims that it was clearly erroneous for the motion judge to find that the shed behind the vehicles was in obvious use based on the condition of the lawnmowers inside the shed, and suggested at oral argument that this indicates that the area was outside of the curtilage. Assuming without deciding that the finding was erroneous, where no one factor is dispositive, the driveway was nonetheless within the curtilage. See McCarthy, 428 Mass. at 874.

Furthermore, there was evidence that the grandfather was the owner of the truck. "[T]he scope of a warrant authorizing the search of a particularly described residence includes any automobiles, owned or controlled by the owner of such residence, which are located within the curtilage of the premises at the time the warrant is executed." Commonwealth v. Signorine, 404 Mass. 400, 403 (1989).

The Commonwealth introduced data at trial tracking the dates and times that the defendant's car was on General Patton Drive. From that data, the Commonwealth estimated that the defendant went to the General Patton property 100 times in forty-six days.