NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-1170                                              Appeals Court

COMMONWEALTH  vs.  ERICH SORENSON.

No. 19-P-1170.

Middlesex.      September 8, 2020. - November 16, 2020.

Present:  Green, C.J., Milkey, & Wendlandt, JJ.


Arrest.  Search and Seizure, Curtilage, Arrest.  Constitutional
    Law, Assistance of counsel, Arrest, Search and seizure.
    Due Process of Law, Assistance of counsel.  Practice,
    Criminal, Assistance of counsel, Motion to suppress.




    Indictments found and returned in the Superior Court
Department on June 22, 2012.

    Following review by this court, 93 Mass. App. Ct. 1108
(2018), a motion for a new trial, filed on April 8, 2019, was
considered by Robert L. Ullmann, J., and a motion for
reconsideration also was considered by him.


    Sara A. Laroche for the defendant.
    Kevin J. Curtin, Assistant District Attorney, for the
Commonwealth.


    WENDLANDT, J.  In this case we consider the issue whether

trial counsel provided ineffective assistance by failing to move

to suppress evidence garnered during the defendant's warrantless

arrest in the hallway immediately adjacent to the apartment of the multiunit, three-story apartment building in which he was living.  The motion judge denied the defendant's motion for a new trial, holding that the hallway was not a constitutionally protected area and therefore counsel's failure to file such a motion did not constitute ineffective assistance under the familiar Saferian test.[1,2]  Concluding that the denial of the motion for a new trial was not an abuse of discretion because the common hallway at issue did not constitute the apartment's curtilage and, therefore, there was no abuse of discretion in denying the defendant's motion for reconsideration, we affirm.

Background.  The defendant was convicted of armed assault with intent to rob, G. L. c. 265, § 18 (b); and assault and battery by means of a dangerous weapon causing serious bodily injury, G. L. c. 265, § 15A (c) (i), stemming from the stabbing of the victim.  An eyewitness, who was familiar with the defendant, identified him to the police as the assailant and told them the street address where the defendant lived and that

---

[1] Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

[2] The defendant also filed a timely motion for reconsideration and appeals only from the order denying it. Because the timely motion for reconsideration incorporates most of the same arguments made in the motion for a new trial, our review requires determination whether the motion for a new trial correctly was decided.  The Commonwealth does not contend otherwise.

he lived in "an apartment on the third floor, in the back right-hand side apartment."  When Lowell Police Sergeant Joseph Murray arrived at the address, he observed a "three-story building with numerous apartments on each floor."

Sergeant Murray knocked on the door of the unit.  A woman answered the door, and Murray asked whether the defendant was home.  At that moment, the defendant came walking toward the door from inside the apartment.  Murray asked the defendant "to step out in the hallway."  The defendant complied, and Murray proceeded to arrest him.

In his direct appeal, the defendant conceded that there was probable cause to arrest him, but argued for the first time that the fruits of his warrantless arrest[3] should have been suppressed because the arrest occurred in the curtilage of the apartment. Commonwealth v. Sorenson, 93 Mass. App. Ct. 1108 (2018).  We affirmed, holding that because the defendant raised the argument for the first time on appeal, it was waived.  Id.

---

[3] As Murray was handcuffing the defendant and explaining that he was being arrested in connection with "a stabbing that occurred the other night," the defendant responded, "I was here all Saturday."  Murray had not told him that the stabbing occurred on Saturday.  Murray also noticed during the arrest that the defendant had a band-aid on his finger and later, after the band-aid had been removed, observed a laceration on that finger.  Murray found the injury significant because "it's not uncommon when somebody is involved in a stabbing that they get cut themselves."

In his motion for new trial, the defendant contended that he was provided constitutionally ineffective counsel because counsel failed to make the curtilage argument. As discussed supra, the motion judge, who was also the trial judge, denied the motion.

Discussion. "The trial judge upon motion in writing may grant a new trial at any time if it appears that justice may not have been done." Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). We review the denial of a motion for a new trial for an abuse of discretion. See Commonwealth v. Fernandes, 485 Mass. 172, 187 n.10 (2020). "We afford particular deference to a decision on a motion for a new trial based on claims of ineffective assistance where the motion judge was, as here, the trial judge." Commonwealth v. Diaz Perez, 484 Mass. 69, 73 (2020), quoting Commonwealth v. Martin, 467 Mass. 291, 316 (2014).

The defendant claims entitlement to a new trial because, he contends, his counsel provided constitutionally deficient assistance. Claims of ineffective assistance of counsel require examination of counsel's performance to determine (1) "whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and, if so, (2) "whether it has likely deprived the

defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). The defendant maintains that his counsel's performance was constitutionally deficient because counsel did not seek to suppress evidence collected during the defendant's warrantless arrest in the curtilage of his residence -- an arrest, he contends, that violated his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. "In order to succeed on a claim of ineffective assistance of counsel based on the failure to file a motion to suppress evidence, the defendant must show that he would have prevailed on such a motion." Commonwealth v. Johnston, 467 Mass. 674, 688 (2014). See Commonwealth v. Lally, 473 Mass. 693, 703 n.10 (2016), quoting Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977) ("question is whether filing of the motion 'might have accomplished something material for the defense'"). Because the record does not support a conclusion that the hallway where the defendant was arrested constituted the curtilage of his residence, the defendant has failed to make the necessary showing.

Curtilage.[4]  In determining whether an area outside of the home constitutes the constitutionally protected curtilage of the

_____

[4] Absent justification, the police cannot intrude upon a constitutionally protected area, including the curtilage of the

home, "the central component of [the] inquiry [is] whether the area harbors the 'intimate activity associated with the sanctity of a [person's] home and the privacies of life'" (quotation omitted).  United States v. Dunn, 480 U.S. 294, 300 (1987), quoting Oliver v. United States, 466 U.S. 170, 180 (1984).  Although the concept of curtilage is to be assessed on a case-by-case basis, the Supreme Judicial Court has cautioned that it "is applied narrowly to multiunit apartment buildings."  Commonwealth v. Escalera, 462 Mass. 636, 648 (2012) (locked basement area exclusively accessible by tenants of apartment within curtilage of defendant's apartment).[5]

---

home, without a warrant.  See Florida v. Jardines, 569 U.S. 1, 5-6, 11 (2013).  This constitutional protection of the home and its curtilage does not require a showing that the defendant has a reasonable expectation of privacy; instead, the protection is grounded in property rights.  Id. at 11 (unnecessary to consider reasonable expectation of privacy test when government gains evidence by physically intruding on constitutionally protected areas).  "One virtue of the Fourth Amendment's property-rights baseline is that it keeps easy cases easy."  Id.

[5] The defendant maintains that the view espoused by the court in Escalera no longer represents the current approach to the question of curtilage.  Compare Commonwealth v. Leslie, 477 Mass. 48, 54 (2017) ("we reject the Commonwealth's argument that in cases involving a search in a multifamily home, the validity of the search turns on the defendant's exclusive control or expectation of privacy in the area searched"; "the essential question is whether the area searched is within the home or its curtilage"), with Escalera, 462 Mass. at 648 ("The concept of curtilage is applied narrowly to multiunit apartment buildings. . . .  [A multiunit] tenant's 'dwelling' cannot reasonably be said to extend beyond his own apartment and perhaps any separate areas subject to his exclusive control" [quotation and citation omitted]).  See Commonwealth v. Thomas,

On appeal, the defendant incorrectly contends that the judge erred by applying the four factors set forth in Dunn to determine whether the hallway constituted curtilage.[6] The four factors are: (i) "the proximity of the area claimed to be curtilage to the home"; (ii) "whether the area is included within an enclosure surrounding the home"; (iii) "the nature of the uses to which the area is put"; and (iv) "the steps taken by the resident to protect the area from observation by people passing by." Dunn, 480 U.S. at 301. Contrary to the

---

358 Mass. 771, 774-775 (1971) ("In a modern urban multifamily apartment house, the area within the 'curtilage' is necessarily much more limited than in the case of a rural dwelling subject to one owner's control"). Nothing in Leslie, supra at 57, which emphasizes the relevance of the Dunn factors, is inconsistent with our approach or conclusion in this case.

[6] The defendant contends that our decision in Commonwealth v. Street, 56 Mass. App. Ct. 301 (2002), abrogated in part on other grounds by Commonwealth v. Tyree, 455 Mass. 676, 697-700 (2010), is controlling. In Street, however, the defendant was inside his apartment or "on or at" the threshold when the arrest was effected, id. at 306-307, 307 n.11 (defendant opened door to his apartment and arrest occurred while police stood in hallway). In contrast, the record in the present case reveals that the defendant was in the hallway, outside of the apartment and its threshold when he was arrested. The defendant's reliance on Commonwealth v. Molina, 439 Mass. 206, 207-208, 211 (2003); Commonwealth v. Marquez, 434 Mass. 370, 375 (2001); and United States v. Allen, 813 F.3d 76, 78 (2d Cir. 2016), each of which involved an arrest effected inside the defendant's home, is similarly unavailing. See Allen, supra at 78 ("This is a liminal case, which presents a close line-drawing problem. . . . If the officers had gone into [the defendant's] apartment without a warrant to effect the arrest, the arrest would violate the Constitution; if [the defendant] had come out of the apartment into the street and been arrested there, no warrant would be required").

defendant's contention, the Supreme Judicial Court has "emphasize[d] the relevance of the Dunn factors for our courts in determining whether a challenged police action occurr[ed] within the boundaries of a home." Commonwealth v. Leslie, 477 Mass. 48, 57 (2017) (applying Dunn factors to determine whether side yard and porch of multifamily home were part of curtilage). While the factors do not constitute a "finely tuned formula" that ought to be "mechanically applied," they "are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration -- whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." Id. at 55, quoting Dunn, supra. Thus, the judge here did not err in analyzing the defendant's claim by application of the Dunn factors.

Nor did the judge err in concluding, after weighing the Dunn factors, that the common hallway adjacent to the defendant's residence was not curtilage. Indeed, the only Dunn factor that favors the defendant's position is the first -- the proximity of the hallway to the defendant's home. The record shows that the hallway was physically adjacent to the apartment unit.

The remaining three factors do not support extending the concept of curtilage. Specifically, with regard to the second

Dunn factor, the record is devoid of any information as to whether the hallway was enclosed; certainly, there is nothing in the record suggesting that it was enclosed relative to the defendant's individual apartment. See Commonwealth v. McCarthy, 428 Mass. 871, 875 (1999) (noting second Dunn factor does not favor finding area curtilage where "[t]o whatever extent the parking lot is enclosed, it is an enclosure encompassing a common area utilized by all the tenants and visitors of the building").

Nor does the third Dunn factor -- the nature of the uses of the hallway -- favor the defendant's position. From the record, it appears the hallway was a common hallway used by the residents of the building (and their guests) to reach each separate unit. See McCarthy, 428 Mass. at 875 (lot used by tenants, guests, maintenance workers, and anyone else with business at building not curtilage).

Furthermore, nothing in the record supports a finding that any steps were taken to obscure the hallway from view -- the fourth Dunn factor. To the contrary, it appears to have been open to residents and guests. See McCarthy, 428 Mass. at 875 (lot not curtilage where "freely visible" to anyone entering it). Contrast Commonwealth v. Fernandez, 458 Mass. 137, 145-146 (2010) (curtilage extended to driveway where fence separated driveway from neighboring building, other residents and their

guests had no need to traverse driveway, and police did not observe driveway being used by anyone other than defendant and his guests).

In sum, the present record does not support the defendant's position that the hallway was an area that "harbors the 'intimate activity associated with the sanctity of a [person's] home and the privacies of life'" (quotation omitted). Dunn, 480 U.S. at 300, quoting Oliver, 466 U.S. at 180. In fact, the defendant cites no authority holding that the common hallway of a multiunit apartment complex is curtilage. Our own review reveals no Massachusetts case addressing such a common hallway; indeed, cases in other jurisdictions addressing a similar claim hold that a common hallway of a multiunit apartment complex is not curtilage in contexts comparable to those present in this case. See United States v. Trice, 966 F.3d 506, 515 (6th Cir. 2020) (applying Dunn factors and holding "hallway in . . . a common area open to the public to be used by other apartment tenants to reach their respective units" not curtilage). See also United States v. Makell, 721 Fed. Appx. 307, 308 (4th Cir. 2018) (per curiam) ("the common hallway of the apartment building, including the area in front of [the defendant's] door, was not within the curtilage of his apartment"); Lindsey v. State, 226 Md. App. 253, 281 n.8 (Md. Ct. Spec. App. 2015) (area in front of defendant's apartment door not curtilage); State v.

Edstrom, 916 N.W.2d 512, 520 (Minn. 2018) ("privacies" of home life "do not extend . . . immediately outside [defendant's] apartment"); State v. Nguyen, 841 N.W.2d 676, 682 (N.D. 2013), cert. denied, 576 U.S. 1054 (2015) ("common hallway is not . . . within the curtilage of [defendant's] apartment").

Accordingly, we hold that the judge did not abuse his discretion in concluding that trial counsel's assistance was not ineffective by not bringing a motion to suppress on this basis. Johnston, 467 Mass. at 688 (performance of counsel not ineffective where motion to suppress would not have succeeded).[7]

Seizure. The defendant also asserts, in the alternative, that he was seized inside his residence at the moment Murray knocked on the door and asked the defendant to step out into the hallway. The failure to raise such an argument, the defendant

---

[7] The defendant argues alternatively that he had a reasonable expectation of privacy in the common hallway. See Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). The cases relied on by the defendant are readily distinguished. See Commonwealth v. Porter P., 456 Mass. 254, 259-261 (2010) (discussing juvenile's reasonable expectation of privacy inside his locked room at transitional shelter where he kept his personal belongings); Commonwealth v. Hall, 366 Mass. 790, 794-795 (1975) (tenant who was also owner of apartment building had reasonable expectation of privacy in hallway solely used and controlled by owner and accessed by locked door and buzzer system controlled by owner). Nothing in the record -- such as exclusive or even restricted use, control, or access -- supports an inference that the defendant harbored any reasonable expectation of privacy in the common hallway at issue.

apparently claims, rendered trial counsel's performance constitutionally deficient.

A seizure occurs when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Commonwealth v. Barros, 435 Mass. 171, 173-174 (2001), quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980). See Commonwealth v. Matta, 483 Mass. 357, 362 (2019) ("the . . . pertinent question is whether an officer has, through words or conduct, objectively communicated that the officer would use his or her police power to coerce that person to stay"). "[T]he police do not effectuate a seizure merely by asking questions unless the circumstances of the encounter are sufficiently intimidating that a reasonable person would believe that he was not free to turn his back on his interrogator and walk away." Barros, supra at 174. Police officers "may make inquiry of anyone they wish and knock on any door, so long as they do not implicitly or explicitly assert that the person inquired of is not free to ignore their inquiries." Id., quoting Commonwealth v. Murdough, 428 Mass. 760, 763 (1999). Contrast Johnson v. United States, 333 U.S. 10, 13-15 (1948) (officer's entry into defendant's living quarters without exigency cannot be justified as incident to arrest).

Here, Murray knocked on the defendant's door and asked him to step into the hallway.  Without more, the record does not support the defendant's contention that the request constituted a seizure.  Barros, 435 Mass. at 174.  Accordingly, counsel's assistance was not ineffective in failing to raise this alternative ground.  Johnston, 467 Mass. at 688.[8]  Thus, the motion for new trial and the motion for reconsideration properly were denied.

Order denying motion for
reconsideration affirmed.

---

[8] To the extent the defendant's other arguments have not been explicitly addressed, they "have not been overlooked.  We find nothing in them that requires discussion." Commonwealth v. Brown, 479 Mass. 163, 168 n.3 (2018), quoting Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).