COMMONWEALTH *vs.* JOSEPH J. BUTTERFIELD. No. 97-P-4. March 19, 1998. *Search and Seizure,* Threshold police inquiry, Probable cause, Automobile on private property. *Constitutional Law,* Search and seizure, Probable cause. *Arrest. Probable Cause.*

A complaint was issued in the District Court charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor. A District Court judge allowed the defendant's motion to suppress all evidence stemming from his initial stop. The Commonwealth appeals, and we reverse.

We summarize the facts from the motion judge's findings. On January 13, 1996, at approximately 1:30 A.M., Officer Gerard Miller of the Pittsfield police department was traveling on West Housatonic Street in Pittsfield. He was transporting a stranded motorist to his home on Barker Road. The driving conditions were poor, with several inches of snow on the ground, and almost no traffic was on the roads. Officer Miller passed a black Ford Bronco turning off West Housatonic Street onto Cadwell Road. Seconds after he passed the Ford Bronco, he was directed to the area of 724 West Housatonic Street by a radio dispatch. The dispatcher informed him that a black Ford Bronco reportedly had struck mailboxes in that area. After Officer Miller drove the stranded motorist to Barker Road, he proceeded directly to Cadwell Road in an attempt to locate the black Ford Bronco.

Officer Miller entered Cadwell Road from Barker Road. As he proceeded down the unplowed Cadwell Road, he did not observe tire tracks until he reached Zoar Street. At Zoar Street, he observed a fresh set of tire tracks entering from West Housatonic onto Cadwell Road and then onto Zoar Street. Officer Miller followed the tracks to 15 Zoar Street where he observed the black Ford Bronco in the driveway. Approximately three minutes had passed between Officer Miller's first sighting of the Ford Bronco and his arrival at 15 Zoar Street.

Upon arrival, Officer Miller observed fresh footprints, which were the only footprints on the driveway, leading from the driver's-side front door of the Bronco to the defendant, who was staggering up the walkway. Officer Miller asked the defendant to return to the driveway so they could talk about the Bronco. The defendant refused, but he answered a series of questions posed by the officer. The defendant gave his name and verified that he had been driving the Bronco. Moreover, when asked if he had been drinking, the defendant admitted having had a few drinks but asked Officer Miller not to "give him a hard time" because he was now home.

Officer Miller observed that the defendant had an odor of alcohol on his breath, red eyes, slurred speech, and lack of balance. He asked the defendant to perform field sobriety tests, but the defendant refused and became belligerent. Based on his observations, Officer Miller arrested the defendant for operating while under the influence of intoxicating liquor.

Officer Miller returned to West Housatonic Street the following day to complete his investigation. No evidence of an accident or property damage to any mailboxes was found.

The defendant contends here that his rights under the Fourth and Fifth Amendments to the United States Constitution were violated when the officer barged into the curtilage of his home without permission or probable cause and when he was interrogated without being given Miranda warnings.

1. *The investigatory stop.* We determine first whether justification existed for the initial stop of the defendant.[1] The motion judge ruled that the stop was illegal because it was made without specific and articulable facts indicating that the defendant had committed, was committing, or was about to commit a crime. We disagree.

A police investigatory stop is warranted if the police have "reasonable suspicion" to make the stop. *Commonwealth* v. *Cheek*, 413 Mass. 492, 494 (1992), and cases cited. The "reasonable suspicion" standard is met if police action is " 'based on specific, articulable facts and reasonable inferences [drawn] therefrom' rather than on a 'hunch.' " *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990), and cases cited. Thus, if the police conduct an investigatory stop based on a police radio call, "under both Federal and State law, the Commonwealth must present evidence at the hearing on the motion to suppress on the factual basis for the police radio call in order to establish its indicia of reliability." *Commonwealth* v. *Cheek*, 413 Mass. at 494-495, and cases cited. "Independent police corroboration may make up for deficiencies in [either] or both . . . [the reliability or basis of knowledge] factors. Because the standard is reasonable suspicion rather than probable cause, a less rigorous showing in each of these areas is permissible." *Commonwealth* v. *Lyons*, 409 Mass. at 19.

The police radio call in this case was from an ordinary, known citizen, not an "informant." See *Commonwealth* v. *Bowden*, 379 Mass. 472, 477 (1980). The dispatcher advised Officer Miller that a resident at 724 Housatonic Street had contacted the police station and stated that a black Ford Bronco had just struck the mailbox in front of his residence. Officer Miller knew the caller, whom the dispatcher initially identified to him as a resident of 724 Housatonic Street, from previous incidents at that address.[2] "Unlike the anonymous informer, . . . [the caller in this case] was an ordinary citizen who [stated he had] witnessed a . . . crime and as such could be regarded as reliable without any prior demonstration of his reliability." *Id.*, citing *United States* v. *Rueda*, 549 F.2d 865, 869 (2d Cir. 1977) (contains collection of cases concluding that the requirement of known reliability should be relaxed when information is from eyewitnesses or participants in a crime). Contrast *Commonwealth* v. *Cheek*, 413 Mass. at 495 (Commonwealth presented no evidence as to the source of the information on which the radio call was based).

Several other factors combined with the information from the police radio call gave Officer Miller reasonable suspicion to conduct the stop. First, Officer Miller had observed a black Ford Bronco, thirty to forty seconds before the radio call, on the 700 block of West Housatonic Street. Second, it was approximately 1:40 A.M., a blizzard was in progress, and little, if any, traffic was on the road. Third, Officer Miller had seen the Bronco turning onto Cadwell Road and was able to follow tire tracks leading from West Housatonic Street to Cadwell Road to Zoar Street, where the defendant's Ford Bronco was

---

[1]The Commonwealth's first argument on appeal is that the initial encounter between Officer Miller and the defendant did not amount to a stop or seizure, which triggers constitutional protections. We disagree, but we accept the Commonwealth's further argument that the conduct of Officer Miller amounted to a reasonable stop and brief detention of the defendant.

[2]Officer Miller testified that he was familiar with the residents at 724 West Housatonic Street from having served warrants at that address in the past.

parked in his driveway. There was only one set of footprints leading from the driver's side of the Bronco to the defendant. Fourth, approximately three minutes had passed between the time Officer Miller heard the report of the crime and the time he located the defendant and his Bronco. In view of all the circumstances, we conclude that Officer Miller had sufficient articulable facts for the investigatory stop.[3]

2. *The arrest of the defendant.* The initial stop of the defendant was a seizure within the meaning of the Fourth Amendment. However, the stop, which "[i]s more analogous to a so-called '*Terry* stop,' see *Terry* v. *Ohio*, 392 U.S. 1 (1968), than to a formal arrest," was not unreasonable in the circumstances. *Berkemer* v. *McCarty*, 468 U.S. 420, 439 (1984). Officer Miller, who reasonably suspected that the defendant had committed a property crime, was warranted in briefly detaining the defendant "in order to 'investigate the circumstances that provoke[d] suspicion.' " *Id.*, quoting from *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 881 (1975). While asking the defendant a few questions regarding the reported property damage, Officer Miller made several observations that gave him probable cause to believe that the defendant had been operating his vehicle under the influence of intoxicating liquor.[4]

We reject the contention that the brief detention of the defendant on the walkway outside his home was the functional equivalent of a warrantless arrest in a dwelling. The record is devoid of any facts that suggest the location of Officer Miller and the defendant during questioning to have been within the curtilage of the defendant's home, which is entitled to Fourth Amendment protection. See *Commonwealth* v. *Pietrass*, 392 Mass. 892, 901 (1984). The record indicates that Officer Miller parked his cruiser on the roadway and proceeded into the defendant's driveway. Officer Miller asked the defendant, who was on the walkway and within ten to fifteen feet of the back door, to return to the driveway. The defendant refused but answered Officer Miller's questions. Officer Miller walked toward him to continue the questioning until he was within a couple feet of the defendant. During part of the questioning, the defendant was leaning against his house.

A driveway "may be private according to common law concepts of property, [but] it need not be for purposes of the Fourth Amendment." *Commonwealth* v. *Simmons*, 392 Mass. 45, 49, cert. denied, 469 U.S. 861 (1984). "A driveway is only a semiprivate area. The expectation of privacy which a possessor of land may reasonably have while carrying on activities on his driveway will generally depend upon the nature of the activities and the degree of visibility from the street." (Citations omitted.) *Id.* at 48. In the instant case, both the Bronco and the defendant were visible from the roadway. There is no evidence that the driveway was "[e]nclosed by trees, a fence, shrubbery, or any other

---

[3]The fact that Officer Miller did not speak to the residents of 724 West Housatonic Street and investigate the report before pursuing the black Ford Bronco does not make the stop illegal. As discussed, the stop was justified because Officer Miller had the requisite suspicion. Probable cause does not require that police resolve all their doubts before taking action. See *Commonwealth* v. *Rogers*, 38 Mass. App. Ct. 395, 402 (1995).

[4]Officer Miller observed the unusual manner in which the defendant parked his Bronco, his staggering walk, an odor of alcohol on his breath, his glassy eyes, his slurred speech, and his leaning on the house. The defendant also admitted that he had been drinking and had just arrived home.

obstructions." *Id.* at 49. We conclude that Officer Miller did not intrude upon a legitimate expectation of privacy by entering the defendant's driveway.

Further, Officer Miller's movement toward the defendant, who was first on the walkway leading to the back door and then leaning on his house, did not bring him within the curtilage. This area, like the driveway, lacked characteristics that would create an inference of privacy. Compare *Commonwealth* v. *Straw*, 422 Mass. 756, 759 (1996) (fenced-in area of defendant's property constituted part of defendant's curtilage), with *Commonwealth* v. *Simmons*, 392 Mass. at 51, quoting from *United States* v. *Hersh*, 464 F.2d 228, 230 (9th Cir.), cert. denied, 409 U.S. 1008 (1972) (search consisting of police officer's glancing through window of defendant's home while on front porch was upheld because this area lacked the typical factors that create an inference of privacy: " 'No Trespassing' signs, fences or other enclosures, and bushes or other objects obscuring one's view"). Rather, the described walkway leading to the back door is one a visitor would naturally use to reach the back door. Such areas are not part of the curtilage entitled to Fourth Amendment protection. See *Commonwealth* v. *Pietrass*, 392 Mass. at 901 (concluding that if a porch is one that a visitor would normally expect to pass through to gain access to the front door, it is not part of the curtilage).

*Order allowing motion to suppress reversed.*

*Carolyn K. Ince*, Assistant District Attorney, for the Commonwealth.

*Lori H. Levinson* for the defendant.