On November 25, 2016, a panel of this court issued a memorandum and order pursuant to our rule 1:28, reversing an order of the District Court that had allowed the defendant's motion to suppress. Commonwealth v. Dobson, 90 Mass. App. Ct. 1117 (2016) (Dobson No. 1 ). The defendant applied for further appellate review and, on November 6, 2017, the Supreme Judicial Court remanded the matter to this court "for any reconsideration that may be warranted in light of [that] court's decision in Commonwealth v. Leslie, 477 Mass. 48 (2017)." After careful consideration, we conclude that the result is the same, although, having in mind the discussion of curtilage in Leslie, we do so for slightly different reasons.
The facts offered at the hearing on the motion to suppress are summarized in some detail in our earlier opinion. Dobson No. 1, supra. Briefly, there was evidence that a Sheffield police officer observed the defendant backing his car out of a private driveway. The defendant's car left the driveway as it was backing up, and backed across the front yard of the property, hitting and knocking over a large cement pillar. The defendant then drove over the sidewalk attempting to drive out onto Main Street, a public way. The officer followed the defendant and saw him enter a driveway four or five houses down on the same street. The officer followed into the driveway and spoke to the defendant, who was confrontational. The defendant eventually was arrested for operating a motor vehicle while under the influence of alcohol (OUI).
"In allowing the defendant's motion to suppress, the judge concluded that [the officer] did not have reasonable suspicion to follow the defendant into his driveway. He based that conclusion on the fact that the driving behavior that caught the officer's attention had occurred on private property and not on a public way or a 'place to which the public has a right of access as invitees or licensees. The driveway to a private residence [where the defendant had knocked over the pillar] is none of these.' For this reason, the judge concluded that there had been 'no civil motor vehicle infraction or criminal motor vehicle offense.' " Dobson No. 1, supra. The judge also concluded that "the driveway [area where the defendant was seized and arrested] is part of the curtilage of [his] home."
We disagreed on both points. First, after the judge decided the motion, but before our memorandum and order was issued, the Supreme Judicial Court issued its decision in Commonwealth v. LeBlanc, 475 Mass. 820, 822-823 (2016), making it clear that the element of "public way" was not necessary to prove a violation of the crime of leaving the scene of an accident after causing property damage. See G. L. c. 90, § 24(2)(a ).[2] For that reason, we "[were] satisfied that [the officer] had reasonable suspicion to stop the defendant after observing him backing over [the grass in] a nearby yard, hitting and knocking over a cement pillar, and then driving over the sidewalk in order to pull onto Main Street."[3] Dobson No. 1, supra. "Based on that suspicion, [the officer] was warranted in following and briefly detaining the defendant 'in order to "investigate the circumstances that provoke[d] suspicion." ' Commonwealth v. Butterfield, 44 Mass. App. Ct. 926, 928 (1998), quoting from Berkemer v. McCarty, 468 U.S. 420, 439 (1984). [The officer's] observations while questioning the defendant about the property damage he had witnessed gave [the officer] probable cause to believe that the defendant was impaired from alcohol, prompting the field sobriety tests. See Butterfield, supra." Dobson No. 1, supra.
"Because the parties had argued the motion to suppress largely on the issue whether the defendant's driveway was part of the curtilage of his residence, the judge also addressed that issue, so that we would have the benefit of his findings. In so doing, the judge found that the defendant had pulled his car to the end of the long driveway; the driveway was bordered by 'a tall stockade (privacy type) fence,' with a 'tree line' along the fence, separating the defendant's property from that of his next door neighbor on the driveway side of the house. The front door to the house faces the street and is not directly accessible from the driveway; the front door would be used by the general public. The back door is accessed from the end of the driveway, and '[i]t would appear that occupants or regular visitors would access the home from the rear door/driveway area.' Based on these facts, the judge found that the driveway area in which the defendant was 'seized' was part of the curtilage of the home, observing that 'the [defendant's] driveway area is more like the area contemplated in U[nited States ] v. Dunn, 480 U.S. 294 (1987), and Comm[onwealth] v. McCarthy, 428 Mass. 871 (1999) (proximate to a single family home, enclosed by a privacy fence, reasonably shielded from the view of neighbors or the public).' "[4] Ibid.
Discussion. The issue on remand is whether, at the time the defendant encountered the officer in his driveway, he was within the curtilage of his property, thus affording him protection under the Fourth Amendment to the United States Constitution. " 'In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error....' Commonwealth v. Fernandez, 458 Mass. 137, 142 (2010), quoting Commonwealth v. Scott, 440 Mass. 642, 646 (2004). 'However, "[w]e review independently the application of constitutional principles to the facts found." ' [ Commonwealth v.] Warren, 475 Mass. [530, 534 (2016) ], quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004). Where, as here, the issue is whether a search occurred within the curtilage of a home, 'we undertake our independent review cognizant that there is no "finely tuned formula" that demarcates the curtilage in a given case.' Fernandez, supra, quoting United States v. Dunn, 480 U.S. [at] 301." Leslie, 477 Mass. at 53.
"In determining whether a particular parking area is within the curtilage of a residence, we consider four factors: '(1) the proximity of the area to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observations by people passing by.' " Fernandez, supra at 143, quoting from McCarthy, supra at 874. See Dunn, 480 U.S. at 301.
"A driveway is only a semiprivate area" and, thus, "may be private according to common law concepts of property, [but] it need not be for purposes of the Fourth Amendment." Butterfield, supra at 928, quoting from Commonwealth v. Simmons, 392 Mass. 45, 48-49, cert. denied, 469 U.S. 861 (1984). The Butterfield court went on to discuss the issue in terms of whether the defendant had a reasonable expectation of privacy in his driveway. However, in Leslie, the court, quoting from Dunn and Fernandez, analyzed the Dunn factors somewhat differently, saying, "these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration-whether the area in question is so intimately tied to the home itself that it should be placed under the home's umbrella of Fourth Amendment protection" (emphasis supplied). Leslie, supra at 55 (quotation omitted).
Following that formula in applying the Dunn factors, we conclude that the facts of the present case are distinguishable from those in Leslie and compel a different result. For example, in this case, "the photographs admitted in evidence show that, after parking, the defendant's car would have been clearly visible from the street; although a stockade fence and trees bordered the driveway along the side of it, there was 'no fence at all ... closer to the street [in front of the driveway].' In front of the house, the photographs admitted in evidence show a low picket fence, coming to the height of the bottom of the front porch of the house. As a result, neighbors and passersby had a full view of the property, at least from the street running in front of it. The walkway leading to the back door (on which the defendant testified he was standing when confronted by [the officer] is a pathway that, as the judge determined, a regular visitor would access to reach the back door." Dobson No. 1, supra.
We apply the Dunn factors specifically to the present case as follows.
Proximity. In Leslie, "[t]he porch was physically connected to the home itself, and as the Court in [ Florida v.] Jardines, [569 U.S. 1 (2013),] noted, '[t]he front porch is the classic exemplar of an area adjacent to the home and "to which the activity of home life extends." ' Jardines, [569 U.S. at 7 ], quoting Oliver [v. United States ], 466 U.S. [170,] 182 n.12 [1984]. Although [in that case] the sawed-off shotgun was found under the porch area, the side yard was very close in proximity to the porch and, by extension, the house. This factor weighs in favor of a determination that the porch and side yard were part of the home's curtilage." Leslie, supra at 55-56. In the present case, the driveway ran alongside the house. It was not far away, but it could not reasonably be said to be an area "to which the activity of home life extends." Ibid. Lacy Price, the codefendant in Leslie, was the resident of the home and was receiving his guests on the porch. There is no indication here that the defendant's driveway was used for anything other than parking his car and the cars of anyone visiting his house. This factor is neutral.
Enclosure. In Leslie, "[t]he front yard was enclosed with a chain link fence and the left border of the front yard was enclosed with a large wooden fence about five to six feet away from the porch where the sawed-off shotgun was recovered. Additionally, the chain link fence enclosed both the house and the porch area, allowing the inference that the porch and side yard 'should be treated as an adjunct to the house.' Dunn, 480 U.S. at 302." Leslie, supra at 56. Here, the yard was partially fenced, but the view of the driveway was wide open. This factor is also neutral.
Nature of use. In Leslie, the record reflected "that the defendants were using the porch as an extension of Price's home. Price waited for his guests on the porch as they arrived, and the five men were on the porch and in the front yard for the entirety of the visit. Price used the porch area as an extension of his living room, to greet and entertain guests." Ibid. Again, there is no indication in the present case that the defendant was using his driveway in any such manner. This factor favors a determination that the driveway was not part of the curtilage of the defendant's home.
Steps taken to protect from observation. In Leslie, "steps were clearly taken to obscure the view of the side yard and the area under the porch where the sawed-off shotgun was found. A large blue recycling bin was placed in front of the area, which obstructed the view from the street. Additionally, the large wooden fence obscured the view of the area from the left side of the yard where the sawed-off shotgun was found. Although Detective Griffin testified that the fence in the front yard did not obstruct his view completely, his testimony established that he could not see what Leslie was manipulating under the porch because his view from the street was obscured." Ibid. Here, while the driveway is bounded on one side by the house and on the other by a fence, there were no apparent efforts to conceal the driveway, the defendant's car, or his person in the driveway from anyone on the street. This factor also favors a determination that the driveway was not part of the curtilage to the defendant's home.
Apart from the Dunn factors, this case is significantly different from both Leslie and Jardines, for at least two other reasons. In Leslie, the court, citing Jardines, "explained [that] a police officer, like any other citizen, has an implied license to walk up the path to the front door of a home and knock on the front door. That license, however, is limited in scope, purpose, and duration.... Here, Detective Griffin and the other officers were entitled to open the front gate, walk up the path and onto the porch, and engage Price and his guests in conversation. In veering off the path and venturing into the side yard of the home for the purpose of conducting a search for the weapon, Detective Griffin engaged in the precise conduct that Jardines found offensive to the Fourth Amendment. See [Jardines, supra at 9] ('the background social norms that invite a visitor to the front door do not invite him there to conduct a search'). Just as the police officers in Jardines exceeded the scope of their license when they used a drug-sniffing dog to search the front porch, here Detective Griffin had neither express nor implied license to search the side yard and porch area. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at [10] ('their behavior objectively reveals a purpose to conduct a search, which is not what anyone would think he had license to do')." Id. at 57. The officer in the present case did no more than pull into the driveway and attempt to engage the defendant in conversation-at least until the defendant confronted him and, in so doing, gave the officer probable cause to arrest him for OUI. In particular, the officer did nothing comparable to looking under the porch-or bringing a drug dog to sniff for drugs.
Another important distinction is that, in Leslie, the court did not consider the issue whether the officers had probable cause and exigent circumstances for their search because the Commonwealth had not argued that issue below. Id. at 58. In the present case, the Commonwealth argued in its memorandum in opposition to the defendant's motion to suppress that, at the time that the officer entered the defendant's driveway, he had probable cause to arrest him for leaving the scene of an accident after causing property damage and negligent operation of a motor vehicle.
Specifically, the officer here observed the defendant driving erratically, apparently damaging property, and then driving away. The officer did not know the defendant's name or know that the driveway the defendant entered was his own. It was reasonable, therefore, for the officer to pull into the driveway behind the defendant in order to identify him and to conduct a threshold inquiry. Soon after he began the threshold inquiry, the defendant's impairment became obvious and the officer then also had probable cause to believe that the defendant, whom he had seen driving, was under the influence of alcohol.
As the Commonwealth argues, these facts are very similar to those in Butterfield, 44 Mass. App. Ct. at 928 ("The record indicates that Officer Miller parked his cruiser on the roadway and proceeded into the defendant's driveway. Officer Miller asked the defendant, who was on the walkway and within ten to fifteen feet of the back door, to return to the driveway. The defendant refused but answered Officer Miller's questions. Officer Miller walked toward him to continue the questioning until he was within a couple feet of the defendant. During part of the questioning, the defendant was leaning against his house"). There, "[w]e conclude[d] that Officer Miller did not intrude upon a legitimate expectation of privacy by entering the defendant's driveway." Id. at 929.
Finally, the language in the various cases that have analyzed the scope of what an officer may do in "hot pursuit" of someone fleeing is useful here. The cases are not precisely on point because there is no evidence here that this defendant knew that the officer was following him. Nonetheless, some of the same considerations should apply. In Commonwealth v. Jewett, 471 Mass. 624 (2015), the arresting officer had probable cause to arrest the defendant for reckless operation of a motor vehicle, a "jailable" offense. Id. at 629. The court "conclude[d] that hot pursuit of an individual suspected of committing a jailable misdemeanor such as in this case is permissible." Id. at 633. This was so, even though the officer pursued the defendant into his home. As the court explained, "[e]stablishing a bright-line rule prohibiting the warrantless entry of a home when the underlying offense is of lesser magnitude than a felony would send an unacceptable message to the defendant who 'drinks and drives that a hot pursuit or an arrest set in motion can be thwarted by beating police to one's door.' [ State v.] Paul, [548 N.W.2d 260,] 267 [ (Minn. 1996) ]. We decline to adopt such a rule, which runs directly counter to sound public policy. 'Law enforcement is not a child's game of prisoners base, or a contest, with apprehension and conviction depending upon whether the officer or defendant is the fleetest of foot.' State v. Ricci, 144 N.H. 241, 245 (1999), quoting State v. Blake, 468 N.E.2d 548, 553 (Ind. Ct. App. 1984). Moreover, such a categorical distinction would arbitrarily permit perpetrators of serious misdemeanors 'to avoid punishment merely because of how the legislature had labelled an infraction.' Paul, 548 N.W.2d at 267. Rather, limiting the hot pursuit exception to felonies and jailable misdemeanors appropriately balances the constitutional protections of both the Fourth Amendment and art. 14 [of the Massachusetts Declaration of Rights] with society's interest in apprehending individuals suspected of serious crimes." Jewett, supra at 634. See Commonwealth v. Martin, 91 Mass. App. Ct. 733, 738-742 (2017).
We are persuaded that the same analysis is applicable here. That is, a police officer who observes a person commit a jailable offense, whether felony or misdemeanor, should be permitted to follow that person, at least into his driveway, in order to identify the individual and make further inquiries.
The order allowing the defendant's motion to suppress is reversed.
So ordered.
Reversed.

In pertinent part, the statute provides, "Whoever ..., without stopping and making known his name, residence and the register number of his motor vehicle goes away after knowingly colliding with or otherwise causing injury to any other vehicle or property ... shall be punished by a fine of not less than twenty dollars nor more than two hundred dollars or by imprisonment for not less than two weeks nor more than two years, or both." G. L. c. 90, § 24(2)(a ).

We also noted that, "[b]ased on the facts found by the judge, and considering the defendant's erratic driving, which was not contested, [the officer] reasonably could have suspected the defendant of more than one crime; in addition to leaving the scene of an accident after causing property damage, the defendant could have been suspected of wanton destruction of personal property, as the Commonwealth argued in its motion to reconsider, or operating a motor vehicle while under the influence of alcohol." Dobson No. 1, supra.

"In Dunn, the United States Supreme Court concluded 'that the [defendant's] barn and the area around it lay outside the curtilage of the house' (emphasis added). Dunn, supra at 296. In McCarthy, the court 'conclu[ded] that the visitor's parking space [in the defendant's apartment parking lot] is not within the curtilage of the defendant's apartment.' McCarthy, supra at 875." Dobson No. 1, supra.